UNITED STATES of America, Appellee,

v.

**Justo GUZMAN, Appellant.**

**No. 444, Docket 84–1283.**

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1984.

Decided Feb. 12, 1985.

---

William Lupo, Brooklyn, N.Y. (Norman A. Olch, New York City, of counsel), for appellant.

Carol B. Schachner, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., for the E.D.N.Y., Allyne R. Ross and Jane Simkin Smith, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for appellee.

Before LUMBARD, MANSFIELD and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

Justo Guzman appeals from his conviction, entered after a jury trial in the Eastern District, for conspiracy to possess with intent to distribute cocaine and for possession of, with intent to distribute, approximately one and one-half kilograms of cocaine. 21 U.S.C. §§ 841(a)(1), 846 (1982). Guzman was sentenced to 15-year terms of imprisonment on each of the two counts, to run consecutively, to two fines of $25,000, and to a special parole term of life. Guzman claims error in five respects: (1) he was forced to go to trial less than 30 days after the filing of the indictment on which he was tried; (2) statements by a non-testifying co-defendant were improperly admitted against him at trial; (3) statements made by a police officer during interrogation, which asserted Guzman's connection to a large drug ring, were erroneously admitted at trial; (4) the court gave two supplementary "conscious avoidance" charges to the jury during its deliberations; and (5) Guzman was sentenced to the statutory maximum.

The appellant was forced to trial on the conspiracy count only one day after the filing of a superseding indictment which expanded the scope of the conspiracy from a time period of two days—March 21 and 22, 1984—to a period covering almost two years, from April 12, 1982 to March 22, 1984. As we conclude that, in view of the substantive change in the conspiracy count charged in the superseding indictment, Guzman should not have been compelled to stand trial on that count until a reasonable time after this indictment was filed, we reverse his conviction as to Count I, the conspiracy charge.

We find no error regarding Guzman's conviction on Count II, the possession count, and accordingly, affirm that conviction.

I.

Guzman, with Seiichi Kawai and Dora Susana Forero, was first brought to trial on June 4, 1984, on a March 28 indictment which charged, in Count I, that these three, "together with others known and unknown," had conspired, between and including March 21 and 22, 1984, to distribute cocaine in violation of Title 21, U.S.C. § 841(a)(1). Count II charged all three with possession, on or about March 22, 1984, of one and one-half kilograms of cocaine.

On the second day of trial, June 5, Judge Platt declared a mistrial, on motion of defendants' counsel, because of the prosecutor's opening remark that Guzman was a member of the Victor Crespo cocaine smuggling organization. The statement was improper because the prosecutor could not substantiate this assertion with competent evidence at trial. Later that same day, the government announced that it would seek a superseding indictment, expanding the scope of the alleged conspiracy, to avoid any conceivable objection to the introduction of a ledger that recorded drug transactions dating back to 1982.

The superseding indictment, filed June 6, charged the three defendants with conspiring together from April 12, 1982 to March 22, 1984, an enlargement of the duration of the alleged conspiracy from two days to almost two years. The second count charged only Guzman with the March 22, 1984 possession of one and one-half kilograms of cocaine.

Over the objection of defense counsel, the district court ordered the defendants to stand trial again the next day, June 7. On June 15, after two days of deliberation, the jury found Guzman guilty on both counts. The jury was then discharged, after report-

ing that they could not agree on a verdict with regard to the two remaining defendants, who were convicted at a subsequent trial. As Guzman makes no claim that the evidence was insufficient to support his conviction, nor that the March 22, 1984 seizures of records, drug paraphernalia, and cocaine were illegal, a brief summary of the government's case will serve for discussion of Guzman's arguments on appeal.

## II.

The government's case was presented through the testimony of 10 witnesses and the evidence seized pursuant to search warrant. Acting on a tip that the appellant was a cocaine distributor for the Victor Crespo organization, an international drug smuggling outfit, New York Drug Enforcement Task Force (DETF) agents placed Guzman under surveillance. On March 21, 1984, agents observed an apparent transaction between Guzman, Kawai, and Forero. According to the testimony of DETF agents, Kawai and Forero, who remained together after the suspicious encounter, were followed and then approached by officers. As the agents neared, Forero advised Kawai, in Spanish, not to worry, but to tell her how much money they had and whether they could allege that the money came from a land sale. When the officers examined the contents of a bag and purse, with the defendants' consent, they found approximately $240,000 in cash. The officers testified that during this encounter, Forero repeatedly asked Kawai, again in Spanish, to come up with an explanation for the money. Kawai and Forero were taken to headquarters and arrested.

A search, pursuant to warrant, of a Bayside, Queens apartment at 212–10 43rd Avenue, which was leased by Guzman, yielded 1203 grams of 99.4% pure cocaine and 53.5 grams of 93.2% pure cocaine—the approximately one and one-half kilograms of cocaine charged in the indictment—a heat tester and field test kit for narcotics, a triple-beam scale, and an electric money counter. Later that day, execution of a search warrant at an apartment at 353 E. 72nd Street, where Guzman had been observed, produced 100 plastic bags, numerous shoe boxes with handwritten notations, and a large metal safe.

The safe was taken to headquarters. Upon the request of Detective Robinson, a DETF agent, it was opened by Guzman, who had been arrested earlier that day. Inside the safe, detectives found a blue ledger chronicling the distribution of approximately 1900 pounds of cocaine and the collection of about $35 million between April 1982 and March 1984. The notebook contained numerous references to "Japones," "Japon," and "Sussy," aliases, the government asserts, for Kawai and his wife, Forero.

At trial, Robinson testified that after he examined the contents of the safe, he asked the defendant whether he would be willing to cooperate. When Guzman answered affirmatively, Robinson told him that he was familiar with the organization that Guzman was working for and that it would be difficult to lie. According to Robinson, he then asked Guzman when he had last seen Chepe, not otherwise identified at trial, but apparently a reference to Victor Crespo. Guzman responded that he had last seen Chepe two years ago. When asked about one Fernando Carmona, Guzman told the detective he was in Miami, as far as Guzman knew. Robinson further testified:

> He said to me at that point, well, he said, you know everything about this organization, what do you need me for.

The court admitted Robinson's testimony over Guzman's objection.

Guzman offered no evidence in his defense.

## III.

*Trial on the Superseding Indictment.*

 Over the strenuous objections of Guzman's counsel, the district court ordered defendant Guzman to stand trial on June 7, 1984, one day after the filing of a superseding indictment.

By its terms, 18 U.S.C. § 3161(c)(2) provides that:

> Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

Some circuits have interpreted this provision to guarantee that a defendant will not be forced to trial less than 30 days from the date on which he first appears on a superseding indictment, however minimal the differences between the superseding indictment and the original. *See e.g., United States v. Harris,* 724 F.2d 1452, 1455 (9th Cir.1984). As we stated in *United States v. Todisco,* 667 F.2d 255, 260 (2d Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 71 L.Ed.2d 444 (1982), however, we read the Speedy Trial Act, 18 U.S.C. § 3161(c), as not divesting a district court of its discretion to grant or refuse a continuance, where this discretion is exercised in keeping with the policies underlying specific provisions of the Act. When a superseding indictment makes only insubstantial changes in an original indictment, so that a defendant has not been deprived of adequate time to prepare a defense, we hold that, consistent with 18 U.S.C. § 3161(c)(2), a district court may exercise its discretion in proceeding to trial without further delay. *See United States v. Horton,* 676 F.2d 1165, 1169–70 (7th Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983).

However, we cannot agree with the government's contentions that the changes in Guzman's superseding indictment were insubstantial and that Guzman was therefore not prejudiced because forced to proceed immediately to trial on the conspiracy count. Even though the same evidence may have been presented to prove the existence of a two-year conspiracy as would have been used on the indictment charging a conspiracy of only two days, it cannot be disputed that in the proper preparation of a defense to the charge of a two-year conspiracy, counsel was required to review a far longer period of activity with his client.

■ By focusing on the prosecution's case and the fact that the evidence introduced at trial on the superseding indictment was the same as that which the government had expected to use at the first trial, the district court neglected to take into account the impact that the second indictment might have had on defense theories of the case, and the resultant need for a more extended preparation. Guzman's counsel had specifically indicated to Judge Platt that he needed more time to obtain proof that Guzman was not in the country until after the enlarged conspiracy period began. Regardless of the government's representation that it would offer no new evidence at the second trial, Guzman was entitled to the opportunity to pursue this new line of defense, which would not have been available to him under the original indictment. The district court abused its discretion in not granting defendant Guzman a reasonable continuance to prepare his defense to the charge of participation in a two-year conspiracy. Guzman's conviction on the conspiracy count is, accordingly, reversed.

The considerations which compel us to reverse the conviction on Count I do not apply to Guzman's conviction on Count II, the possession count. Both indictments charged Guzman with the March 22 possession of one and one-half kilograms of cocaine, a charge amply supported by the evidence, which included the cocaine seized from Guzman's apartment. As the deletion of co-defendants Kawai and Forero from the possession count in the second indictment changed neither the prosecution's case nor conceivable defenses by Guzman, the defendant could not possibly have been prejudiced because required to proceed to trial on this charge. Finally, because the great bulk of the evidence adduced at trial, with the exception discussed below, was relevant and admissible as to Count II, Guzman could not have been prejudiced by the improper joinder of the conspiracy count.

## IV.

None of the remaining issues raised by Guzman require reversal of the conviction on Count II.

### 1. *Statements of Co-conspirators.*

Guzman contends that the district court erroneously permitted testimony regarding the March 21 conversation between his co-defendants, Forero and Kawai, to be admitted, without limiting instruction, at trial. The defendant argues that Forero's statements, which concerned what Forero and Kawai should tell the DETF agents about the money in the bag and purse, constituted inadmissible post-conspiracy declarations. These statements, Guzman asserts, did not come within the hearsay-conspiracy exception, applicable only to declarations made while the conspiracy was in progress, and effectively deprived the defendant of his right to confront the declarants.

Forero's statements to Kawai, which were uttered in Spanish, as they stood beside a cab on Park Avenue, were obviously directed at concealment of the nature of their criminal activity—a concealment vital to the progress of the conspiracy itself. The statements were first overheard as DETF agents approached the co-defendants, prior to any effective arrest. Although Guzman at no time requested a limiting instruction, even though the issue was brought to his counsel's attention, Judge Platt correctly instructed the jury that statements made by co-conspirators could be considered as evidence against other defendants only if these defendants were found to be members of the conspiracy and the statements were made in furtherance of the criminal scheme. Fed.R. Evid. 801(d)(2)(E).

■ We note, however, that this evidence would not have been relevant if Guzman had not been charged on the conspiracy count. In light of the overwhelming evidence supporting Guzman's conviction for possession, which included the cocaine and drug paraphernalia seized from his apartment, Guzman's own statements after arrest, and the drug ledger, we find that any prejudice to Guzman in the admission of irrelevant evidence was harmless.

### 2. *Conversation with Detective Robinson.*

■ Guzman also challenges the admission, at trial, of Detective Robinson's testimony of the conversation in which the detective told Guzman that he was familiar with the organization that Guzman was working for and spoke with Guzman concerning the whereabouts of individuals apparently connected to this organization. Guzman contends that his responses to Robinson's questions—that he had last seen Chepe two years ago, that Fernando Carmona was in Miami, as far as he knew—cannot be construed as admissions, admissible under Rule 801(d)(2)(A), Fed.R. Evid., without assuming the truth of Detective Robinson's declaration that he was familiar with an organization of which Guzman was a member. He claims that this statement was not an admission of complicity in any drug smuggling organization, but merely evidence of Robinson's state of mind. We disagree.

At the police station, after the safe had been opened and the blue ledger revealed, Robinson asked Guzman if he wished to cooperate. When Guzman replied that he did, Robinson warned him that he knew of the organization about which he would be questioning Guzman and that, consequently, it would be difficult to lie. After Guzman was questioned as to the whereabouts of two persons, the defendant stated, "[Y]ou know everything about this organization, what do you need me for[?]" Guzman's statements were clearly admissible under Fed.R.Evid. 801(d)(2)(A); Robinson's questions were introduced, not for the truth of what he asserted, but to render Guzman's answers intelligible. The jury, given no other information as to the identity of Chepe, Carmona, or the organization, was certainly permitted to consider Guzman's statements, for what they were worth, as an admission of knowledge of and involvement in an organization inferentially connected to the drug ledger—with

its chronicle of large-scale cocaine distribution.

### 3. *Jury Instructions.*

Guzman next contends that the court committed reversible error by giving two "conscious avoidance" charges during jury deliberations that, according to the defendant, relieved the government of the necessity of proving essential elements of the conspiracy—specific intent, willful participation, or guilty knowledge. Though we need not address the issue, given our reversal of the conspiracy conviction, we do so in order to dispel the possibility of any conceivable prejudice with regard to Guzman's conviction on Count II.

The conscious avoidance instruction tells the jury that, if proven beyond a reasonable doubt, it may find that a defendant was aware of the unlawful character of his conduct, and deliberately refused to learn the specific facts, where the circumstances surrounding the unlawful acts were such that the defendant would necessarily have been apprised of the high probability that he was committing a crime. Here, the instruction was given in response to inquiries from the jury regarding whether, for a finding of conspiracy, the government need prove that defendants were aware that they were dealing in cocaine, specifically, and whether they need know that the money seized was the proceeds from sale of a controlled substance.

Judge Platt correctly instructed the jury as to the essential elements of a conspiracy prior to the commencement of jury deliberations. On the next day, in response to the jury's query regarding proof that defendants knew they were dealing in cocaine, the court repeated the general requirement that the government establish that one or more persons, including one of the defendants, formed and participated in a conspiracy to distribute and possess, with intent to distribute, cocaine.

With respect to the knowledge of individual members of the conspiracy, the court continued:

> Before a jury may find a defendant or any other person has become a member of the conspiracy the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that the defendant or other person who is claimed to have been a member wilfully participated in the unlawful plan with the intent to advance or further some object or person (sic) of the conspiracy....
>
> And, with that by way of background, in answer to your question, your specific question, one need not know that the precise nature of the narcotics involved (sic). One must know ... that it was a controlled substance, *i.e.*, narcotic type substance.

Over the objection of defense counsel, the court then made the following statement, which Guzman characterizes as prejudicial:

> If the government proves beyond a reasonable doubt that a defendant was aware of the high probability that the substance that was being carried or dealt in was the controlled substance and deliberately refused to learn the facts, the government shall have sustained the burden of proving guilty knowledge....

This instruction was followed by a further admonition that proof of negligence, mistake, or plain foolishness on the part of the defendant did not prove guilty knowledge. Upon the jury's second request for a clarifying instruction, this charge was substantially repeated, with a reminder that the supplemental charge should be understood in the context of the instruction as a whole.

At the outset of both challenged supplemental charges, Judge Platt repeated his instruction that the government was required to prove, with respect to each defendant, willful participation in the unlawful plan, with specific intent to further its criminal objective. After—and only after—reiterating the government's burden of proof on this issue, the district court correctly instructed the jury as to a quite distinct matter—the knowledge of individual defendants with regard to the specific details of the conspiracy's operation.

As reflected by the jury's failure to agree on a verdict as to Kawai and Forero, it seems obvious that the jury was concerned with whether these two had acted with sufficient knowledge of Guzman's business to support their conviction for conspiracy. Since the surrounding circumstances were such that reasonable persons could have concluded that the circumstances alone should have apprised defendants of the unlawful nature of their conduct, the charges on conscious avoidance were proper and responsive. *United States v. Mohabir*, 624 F.2d 1140, 1154 (2d Cir.1980).

### 4. The Sentence.

The sentence of 15 years on the possession count was within the statutory limit. We see no reason to disturb it. In view of the reversal of Guzman's conviction on the conspiracy count, there is no need to discuss the propriety of the court's imposition of consecutive 15-year terms of imprisonment.

Guzman's conviction on Count II, the possession count, is affirmed; his conviction on Count I is reversed.