**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Calixtro TORRES–RODRIGUEZ,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ricardo GUARDADO,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Trinidad J. ESTRADA–SOLORZANO,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Am Paro MADRIZ,
Defendant–Appellant.**

Nos. 89–30298 to 89–30301.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1990.

Decided April 4, 1991.

As Amended June 28, 1991.

Steven E. Teich, San Francisco, Cal., for defendant-appellant Am Paro Madriz.

Victor S. Palacios, San Francisco, Cal., for defendants-appellants Calixtro Torres–Rodriguez and Trinidad J. Estrada–Solorzano.

Robert David Baker, San Jose, Cal., for Ricardo Guardado.

Kenneth Bell, Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Before TANG, D.W. NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Defendant-appellants Calixtro Torres–Rodriguez (Torres), Am Paro Madriz, Ricardo Guardado and J. Trinidad Estrada–Solorzano (Estrada) were convicted in a jury trial of various offenses arising out of a drug-trafficking operation. Appellants allege numerous errors in the pre-trial, trial and sentencing phases. We find some of their contentions meritorious and reject the rest.

## I. BACKGROUND

This case stems from a joint investigation by the Royal Canadian Mounted Police (RCMP) and the Drug Enforcement Administration (DEA). As a result of that investigation, the government filed a ten count indictment against the appellants. Just prior to trial, the government filed a superseding indictment charging eleven counts: (1) conspiracy to distribute cocaine from 1986 through March 1989; (2) conspiracy to export cocaine from 1986 through March 1989; (3) interstate travel in aid of racketeering in January 1989; (4) possession with intent to distribute cocaine in January 1989; (5) exportation of cocaine in January 1989; (6) interstate travel in aid of racketeering on March 18, 1989; (7) interstate travel in aid of racketeering in March 1989; (8) possession with intent to distribute cocaine on March 21, 1989; (9) conspiracy to distribute heroin from 1986 through March 1989; (10) possession with intent to distribute heroin on March 21, 1989; and (11) unlawful use of a firearm in connection with drug trafficking.

Torres, Estrada, and Guardado were charged in Counts 1, 2, 7, 8, 9, 10, and 11. Each was convicted of all counts charged, except Count 11. Madriz was charged and convicted of all counts.

In addition to evidence derived from surveillance and monitoring of telephone conversations by the RCMP and the DEA, the evidence at trial consisted primarily of the testimony of Mauricio Freitas and Alfred Lopez. Because several of the defendants challenge the sufficiency of the evidence, we will set forth the facts in some detail. Viewed in the light most favorable to the government, the evidence showed the following:

In 1986, Alfred Lopez was introduced to appellant Madriz. Eventually, Madriz hired Lopez to pick up heroin and cocaine in Mexico and to deliver it in Tacoma. Lopez rented a house at 5423 Clarkston Street in Tacoma for this purpose. Lopez testified that he would drive to Mexico, wait while drugs were concealed in the vehicle, then drive to the Clarkston Street residence. There, he would park the vehicle in the garage where others would remove the drugs.

Mauricio Freitas also participated in the narcotics conspiracy. In June 1988, Freitas

began working as a car salesman at Wes Behel Pontiac in San Jose. While working at the dealership, Freitas observed Miguel Diaz, an unindicted co-conspirator and then Freitas' sales manager, purchasing cocaine from Madriz. Eventually, Diaz involved Freitas in his cocaine transactions. Diaz told Freitas that he could earn extra money by finding buyers who wanted to purchase cocaine from Diaz.

Freitas first met Manual Cruz, an unindicted co-conspirator, after joining a soccer club in San Jose with which Cruz had some connection. Cruz became a frequent customer. Cruz purchased cocaine from Diaz at the car dealership and then took the cocaine to Vancouver, British Columbia, where he sold it. Madriz supplied the requested cocaine.

Freitas arranged the transactions. Freitas would call Madriz to check on the availability of cocaine. If Madriz did not have a large enough quantity of cocaine available in San Jose, she would instruct Freitas to fly to Seattle. There, Freitas would pick up the cocaine and he and Cruz would smuggle the contraband across the Canadian border.

In January 1989, Freitas traveled to Seattle to arrange the purchase of 75 kilograms of cocaine for Cruz. At Madriz' Shirley Street residence, Madriz instructed Freitas to check into the Semiahmoo Resort Hotel in Blaine and the cocaine would be delivered to his room. Freitas testified that he saw appellants Torres and Estrada at the Shirley Street house on that visit. The cocaine was delivered and Freitas helped Cruz smuggle it into Vancouver. Before leaving for Canada, Cruz and Freitas again visited the Shirley Street residence. Freitas saw Estrada there on this visit.

In March 1989, Cruz asked Freitas to call Madriz and arrange for the delivery of 20 kilograms of cocaine to Canada. Madriz indicated that she presently did not have any cocaine in Tacoma, but she was expecting a delivery shortly from California. On March 18th, Freitas flew to Seattle to arrange the transaction. Freitas went to Madriz' Shirley Street house. The shipment did not arrive on March 19th. During Freitas' visit, Madriz made several phone calls, attempting to track the delivery. She also negotiated a sale of heroin during some of the phone calls. Finally, Madriz told Freitas to call her the next morning, and Freitas departed.

On the morning of March 20th, Freitas returned to the Shirley Street residence to wait for the shipment. At ten-thirty that evening, Estrada, Guardado, and Torres arrived in a 1978 Ford pickup with California license plates. They parked the truck in the driveway and entered the house. Madriz introduced the three men to Freitas as the drivers and Guardado told Freitas he worked for Madriz.

The next morning, March 21, the truck was driven into a garage below the house. Estrada and Torres worked on the truck in the garage. Estrada removed a package of 360 grams of heroin from the truck and gave it to Madriz. It is unclear what defendant Guardado was doing at this time.

After the truck emerged from the garage, Estrada, Guardado, and Torres replaced the left mirror on the door of the truck. (Apparently, the truck would not fit in the narrow garage with the side mirrors intact.) Freitas then drove the truck to a highway and headed north. A short time later, Freitas was arrested; the truck was found to contain a false fuel tank in which twenty kilograms of cocaine were located. The nuts holding the tank had fresh markings as if they had been recently removed. Agents also found tools—two ratchets—behind the driver's seat. These ratchets fit the nuts that bolted the gas tank on.

Police arrested Estrada and Guardado after they drove away from the house. Police found that the car they drove was registered to a woman who lived at the house on Clarkston Street. Estrada had the telephone number of the Clarkston residence written on a business card in his possession and Guardado had a key to the residence in his pocket.

Madriz and Torres were arrested at the Shirley Street residence. Agents who searched the house found two bundles of black heroin. In Madriz' bedroom agents

seized a triple-beam scale, $4,700.00 and a loaded .357 magnum revolver located between the box spring and the bed mattress. In the garage, agents located two ratchet sets. The sets were missing the ratchets found in the cab of the truck.

## II. ANALYSIS

We address each appellant's arguments in turn.

### A. Appellant–Defendant Torres

On appeal Torres challenges: (1) the denial of his motion for substitute counsel; (2) the admission of a rent receipt and repair bill into evidence; (3) the sufficiency of the evidence as to all counts; (4) the jury instructions defining conspiracy; and (5) the calculation of his sentence under the Sentencing Guidelines.

#### 1. Substitution of Counsel

On the morning of trial, Torres requested substitution of counsel.[1] Mr. Palacios, Torres' chosen counsel, identified himself to the court and stated that he was there to represent Torres. Torres' appointed counsel informed the court that, because of the proposed substitution, Torres had refused to discuss the case with him at two extensive meetings. The trial court disallowed the substitution. On appeal, Torres argues that the trial court's refusal to allow the substitution of counsel violated his sixth amendment right to counsel of choice.

We will reverse the trial court's decision to deny substitution of counsel only for an abuse of discretion. *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986). The standard we have recently applied to determine whether there has been an abuse of discretion is drawn from *United States v. Mills*, 597 F.2d 693, 700 (9th Cir.1979), a case in which a defendant sought to substitute one appointed counsel for another. *Mills* specified the governing factors to be: (1) the timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *Id.* at 700. We have recently applied the *Mills* standards in cases where the defendant wished to replace appointed counsel, not with another appointed counsel, but with retained counsel of his choice. *See McClendon*, 782 F.2d at 789; *United States v. Pruitt*, 719 F.2d 975, 978 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). In both *McClendon* and *Pruitt*, as here, the requests for substitution were made on the day the trial was to begin, and the *Mills* factors can be sensibly employed in that situation.[2]

Here the timeliness of the request for substitution presents a problem for Torres. The request came at the commencement of trial. In both *McClendon* and *Pruitt*, we upheld the discretion of trial courts in refusing to grant substitution on the day of

1. Although a formal motion for substitution was not made, the trial court was aware of the proposed substitution. Torres, who is a Spanish-speaker, was unable to explain the circumstances of the substitution to the judge, even through the use of an interpreter. Part of this difficulty resulted from Torres' own uncertainty as to whether the substitute counsel was present and available to represent him. Nonetheless, Torres' request was communicated to the judge by counsel for a co-defendant, by Torres' appointed counsel, and by Torres' retained counsel who identified himself and informed the court that he was there to represent Torres.

2. When there is no threat of a delay in the proceedings, the *Mill* factors necessarily weigh differently when a defendant seeks to substitute retained counsel rather than another appointed

counsel. If a defendant, much in advance of trial, wishes to substitute retained counsel for an appointed one, and no delay in trial will result, factors (2) and (3) become quite irrelevant; there is no reason to deny substitution whether or not the defendant has complaints against, or an irrevocable conflict with, his appointed counsel. A defendant who seeks to replace one appointed counsel with another, however, will need to justify the replacement even in the absence of delay in the proceedings. An indigent defendant is entitled to appointed counsel, but not necessarily to appointed counsel of his choice. *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir.1970). The *Mills* factors (2) and (3) may then be relevant even in the absence of a threat of delay.

trial. *McClendon,* 782 F.2d at 789; *Pruitt,* 719 F.2d at 978. In those cases, however, it was apparent that the substitution would delay the proceedings; in *McClendon,* the defendant sought a continuance to permit the substitution; in *Pruitt,* the trial court made an express finding that the motion to substitute had been made for purposes of delay. Here we are hampered because the trial court made absolutely no inquiry into the defendant's request for substitution. Mr. Palacios, Torres' counsel of choice, was present in the courtroom and identified himself as Torres' counsel. We have no way of knowing what, if any, familiarity he had with the case. If Mr. Palacios intended to ask for a continuance, he was not given the opportunity. Neither Torres nor any of the counsel was permitted to explain the need for substitution. Nor were any attempts made to ascertain whether there was any means, perhaps involving the cooperation of Torres' appointed counsel, of permitting the substitution without causing delay.

We are left, then, with no certain means of establishing the likelihood of delay. We acknowledge, however, that it would be extremely unlikely that counsel substituted into the proceeding at the commencement of trial would be prepared to go forward. Consequently, if there were no other factors to be considered, the likelihood of delay in the proceedings might well be enough to sustain the trial court's denial of substitution. In *McClendon,* for example, we pointed out, in upholding a denial of substitution because it would cause delay, that "there was no showing that the alleged conflict was so great that it prevented McClendon from presenting an adequate defense" and that "[t]he record reveals no lack of communication between McClendon and counsel." *McClendon,* 782 F.2d at 789. The record furnishes no such assurances in this case.

We have no way of knowing the nature of Torres' complaint with his appointed counsel, because the trial judge foreclosed all explanations of any kind regarding the motion to substitute. Of the second *Mills* factor, therefore, we know nothing, and the record indicates that our lack of knowledge is not the fault of Torres.

The record is nearly as deficient regarding the third *Mills* factor—whether the conflict between Torres and his appointed counsel resulted in a total lack of communication preventing an adequate defense. What little the record does suggest is decidedly not reassuring. Torres was not speaking to his appointed counsel. The appointed counsel, unlike his proposed substitute, did not speak Spanish, and all communication between Torres and appointed counsel had to go through an interpreter. This language problem was very likely to exacerbate whatever difficulty in communication resulted from other differences. The circumstances at least called for further exploration, of which there was none. All attempts of all parties to address the question of substitution were cut off.

In light of what the record does reveal, we conclude that the trial court abused its discretion in denying Torres' request for substitution of attorneys without permitting any showing regarding the likelihood of delay, the nature of Torres' complaint, or the degree to which the dispute with his attorney may have prevented an effective defense.[3] We accordingly reverse Torres' conviction.

### 2. Sufficiency of the Evidence

Although we reverse Torres' conviction in its entirety because of the trial court's failure to entertain Torres' motion for substitution of counsel, we address Torres' contention that the evidence was insufficient to support his conviction. If we upheld this contention, Torres could not be retried. *Burks v. United States,* 437

---

**3.** Over Torres' hearsay objections, the prosecution offered a rental receipt found in the Shirley Street house as evidence that Torres had paid the rent on that house. Torres' presents a forceful argument that the receipt cannot be construed as an adoptive admission because it was not found in his actual or constructive possession. Our disposition makes it unnecessary for us to reach this question, or to address any of Torres' other challenges except that of sufficiency of the evidence.

U.S. 1, 17–18, 98 S.Ct. 2141, 2150–2151, 57 L.Ed.2d 1 (1978); *see United States v. McKoy*, 771 F.2d 1207, 1215 (9th Cir.1985).

In a review for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We conclude that the evidence against Torres was sufficient to meet this standard.

There was evidence that Torres was one of three who drove the truck carrying drugs to Tacoma; he arrived with the truck one day after Madriz had telephoned a San Jose source about the expected shipment. He was introduced as one of the drivers by Madriz to Freitas. There was also testimony that he worked on the truck in the garage at the Shirley Street residence just before the truck was stopped and found to have a false gas tank that contained drugs. Moreover, sale and registration documents, along with a repair receipt, showed Torres as owner of the truck. Finally, there was evidence connecting Torres more substantially with Madriz and the Shirley Street residence; Freitas had seen Torres at the residence some months before the arrests, when Freitas was preparing to receive a shipment of cocaine.

■ This evidence was sufficient to permit a rational juror to find that Torres knew of the conspiracy and intentionally acted to further its goals. *See United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir.1989). Having proved a conspiracy, the government need only prove beyond a reasonable doubt that Torres had a slight connection to it. *United States v. Hernandez*, 876 F.2d 774, 779 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989); *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). Torres' activities with his truck, taken in context with all the other evidence against him, could be found a sufficient connection. *See United States v. Haro–Portillo*, 531 F.2d 962, 963 (9th Cir.1976) (holding that evidence that the defendant exercises dominion and control over a vehicle along with other evidence supports a finding of knowing possession of contraband found within vehicle).

■ Once the jury finds Torres guilty of the conspiracy upon sufficient evidence, it also may find him guilty of the substantive violations committed by the conspiracy. *United States v. Miranda–Uriarte*, 649 F.2d 1345, 1353 (9th Cir.1981). We accordingly conclude that the evidence was sufficient to permit Torres' conviction on all the counts of which he was convicted. We remand his case for retrial on those counts.[4]

**B. Appellant–Defendant Madriz**

■ On appeal, Madriz asserts six arguments: (1) the trial court abused its discretion in denying her motion for continuance; (2) the trial court erred in admitting evidence of co-conspirators' activities that were not sufficiently linked to Madriz; (3) the trial court abused its discretion in refusing to allow Madriz to recall a witness for further examination; (4) the evidence is not sufficient to support the conviction on Count 11, use of a firearm in relation to drug trafficking; (5) the trial court erred in instructing the jury regarding Count 11; and (6) the trial court failed to comply with the sentencing guidelines. We address these challenges in turn.

**1. Motion for Continuance**

On April 4, 1989, Madriz was indicted for various racketeering and drug offenses. Counts 1 and 2 of the indictment charged Madriz with conspiracy to distribute and export cocaine. The indictment specified that the cocaine conspiracy existed from 1988 to March 1989, the time of Madriz' arrest. Twelve days before the trial date, the government filed a superseding indict-

---

4. Torres requests that his case be reassigned to a different trial judge if it is remanded for further proceedings, on the ground that "the trial judge's displeasure with defense counsel was manifest." We find insufficient grounds in the record to justify this exceptional relief, and accordingly deny the request.

ment which differed from the original indictment in two significant ways. First, amended Counts 1 and 2 doubled the length of the conspiracy by adding two more years to it. Second, the indictment charged Madriz with an additional count: conspiracy to distribute heroin.

Madriz' attorney received the superseding indictment on June 13th. On June 19, the morning of trial, Madriz moved for a thirty day continuance. The motion was denied.

On appeal, Madriz claims that the trial court's denial of her motion to continue violates both the Speedy Trial Act and the general rules governing continuance in this circuit as stated in *United States v. Flynt*, 756 F.2d 1352, 1358–62 (9th Cir.), *amended* 764 F.2d 675 (9th Cir.1985), and subsequent cases.

■ We review a decision to deny a continuance for clear abuse of discretion. *United States v. Cuevas*, 847 F.2d 1417, 1421 (9th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989); *Frank Briscoe Co., Inc. v. Clark County*, 857 F.2d 606, 611 (9th Cir.1988), *cert. denied*, 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989). A trial court clearly abuses its discretion only if denial of the continuance was arbitrary or unreasonable.

### a. The Speedy Trial Act

■ The Speedy Trial Act authorizes the district court to grant an " 'ends of justice' " continuance when the government seeks a superseding indictment which operates to prejudice a defendant. *United States v. Rojas–Contreras*, 474 U.S. 231, 236, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (quoting 18 U.S.C. § 3161(h)(8)). Among the factors the trial court must examine in considering a request for a continuance is whether failure to grant the motion "... would deny counsel for the defendant ... the reasonable time neces-

sary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(8)(B)(iv). As Justice Blackmun advised in *Rojas–Contreras*: "To avoid prejudicing a defendant, a continuance should be granted where there is a meaningful possibility that a superseding indictment will require an alteration or adjustment in the planned defense." 474 U.S. 231, 240–41, 106 S.Ct. 555, 560 (Blackmun, J., concurring).

There is no indication in the record that the trial court considered whether Madriz would be prejudiced by the superseding indictment. Indeed, the court ruled before Madriz' counsel was able to state the reason for making the motion.

In this case, we find that three days is insufficient time to prepare a defense to the amended and added counts charged in the superseding indictment. The denial of a continuance prejudiced Madriz by depriving her of an opportunity to prepare to respond to the new allegations. The superseding indictment substantially changed three charges. Madriz was prejudiced by the addition of the charge of heroin conspiracy, *see United States v. Harris*, 724 F.2d 1452, 1455 (9th Cir.1984) (reversing denial of continuance where the superseding indictment filed one day before trial, charged different offense),[5] as well as by the doubling of the length of the conspiracies alleged in Counts 1 and 2. *See United States v. Guzman*, 754 F.2d 482, 484–86 (2d Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986) (reversing denial of continuance where superseding indictment filed one day before trial, enlarged the period of alleged conspiracy from two days to two years). We reject the government's contention that adding the period from 1986 to 1988 to the conspiracy charges did nothing to increase the burdens of the defense because evidence of the earlier activity would have been admissible anyway. "Even though the same evi-

---

5. *Harris* does not have full precedential effect because it operated in part on an interpretation of the Speedy Trial Act that was later rejected in *Rojas–Contreras*. Nevertheless, to the extent that it found a superseding indictment different enough to create prejudice against the defen-

dant, *Harris* is useful here. *See United States v. Watkins*, 811 F.2d 1408, 1411 n. 4 (11th Cir.), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987) (prejudice analysis of *Harris* survives *Rojas–Contreras* ).

dence may have been presented to prove the existence of a two-year conspiracy as would have been used on the indictment charging a conspiracy of only two days, it cannot be disputed that in the proper preparation of a defense to the charge of a two-year conspiracy, counsel was required to review a far longer period of activity with his client." *Guzman,* 754 F.2d at 486.

■ This court has not determined what remedy is proper for failure to grant a continuance when a superseding indictment substantially amends only a few counts of a multi-count indictment. Because the Supreme Court in *Rojas–Contreras* viewed prejudice to the accused as the controlling factor in the grant or denial of continuances, we conclude that prejudice should be the determinative factor in deciding which counts of a multi-count indictment must be retried. Our analysis is consistent with that taken by the Second Circuit. *See Guzman,* 754 F.2d at 486.

■ Madriz was not prejudiced in preparing a defense to the eight remaining counts on which she was convicted. The superseding indictment was identical to the original indictment as to these counts. The return of the superseding indictment changed neither the prosecution's case nor the conceivable defenses to these charges. There is no indication that defense of the newly amended counts interfered with the defense of the counts that were not amended. Consequently, we find no need to reverse the convictions on the unchanged counts. Counts 1, 2, and 9, however, must be reversed.[6]

### 2. Admission of Evidence of Co-conspirators' Activities

Madriz argues that the trial court erred in admitting five statements about five different drug transactions. Madriz contends that the government failed to establish any link between Madriz and the five drug transactions, and thus the court improperly admitted these statements to show the operation of a conspiracy.

We have reversed Counts 1, 2, and 9, the only counts alleging operations of a conspiracy. As a result, we need not address this argument.

### 3. Re-examination of the Key Witness

■ After the government rested, Madriz advised the court that she wished to call only one witness—Freitas, the government's star witness, who had testified several days earlier. Pursuant to Fed.R.Evid. 608(b), Madriz intended to attack Freitas' credibility with two incidents of fraud of which she had just learned: the swindling of a former business associate and the swindling of a blind woman Freitas had brought into the country. The trial court denied her request. On appeal, Madriz argues that the district court's refusal to permit her to question further the government's prime witness violated her sixth amendment right to cross-examination.

■ We review rulings under Fed.R. Evid. 608(b) for abuse of discretion. *United States v. Dickens,* 775 F.2d 1056, 1058 (9th Cir.1985). A trial court's decision on the extent of cross-examination will also be upheld unless it constitutes an abuse of discretion. *United States v. Feldman,* 788 F.2d 544, 554 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

Madriz was entitled to "be given maximum opportunity to impeach the credibility of" a key witness. *United States v. Williams,* 668 F.2d 1064, 1070 (9th Cir. 1981). In this case, Madriz cross-examined Freitas at length—on evidentiary details, on prior inconsistent statements, and on the lack of prior consistent statements. Freitas was also cross-examined on issues of bias relating to his knowledge of his wife's infidelity with co-conspirator Cruz, his participation in a fraudulent car-financing scheme, his alleged medical negligence while a physician in Brazil years before, and his alleged prior alcohol and drug abuse. Additionally, Mr. Freitas acknowl-

---

**6.** Because we resolve Madriz' challenge on Speedy Trial grounds, we need not address the challenges under the more general continuance doctrine of *United States v. Flynt,* 756 F.2d at 1358–62.

edged his plea of guilty, the likely sentencing advantages from his plea agreement, and his several separate offenses committed in furtherance of the conspiracy charged.

In her initial cross-examination of Freitas, Madriz exposed Freitas' past involvement in fraud; Freitas admitted to participation in a fraudulent car-financing scheme. In her proposed re-examination of Freitas, Madriz planned to attack Freitas' credibility with two additional instances of fraud. Given the length and extent of Madriz' prior questioning, and the fact that Freitas already admitted to participation in a fraudulent scheme, we do not think the trial court abused its discretion in refusing to allow Madriz to recall Freitas for further questioning. Because Madriz' cross-examination revealed sufficient information from which the trier of fact could have evaluated Freitas' possible bias and motives, confrontation demands were satisfied. *United States v. Whitworth*, 856 F.2d 1268, 1284 (9th Cir.1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989).

### 4. Sufficiency of the Evidence

 Madriz challenges the sufficiency of the evidence only with respect to Count 11, unlawful use and carrying of a firearm in violation of 18 U.S.C. § 924(c). Madriz acknowledges that police found a loaded .357 Magnum in her bedroom between the mattress and spring of the bed. Madriz argues, however, that the firearm played no role in a criminal activity and that consequently her conduct was not proscribed by section 924(c).

We must sustain the conviction on Count 11 if any reasonable juror, viewing the evidence in the light most favorable to the government, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. Section 924(c)(1) provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall ... be sentenced to imprisonment for five years....

18 U.S.C. 924(c)(1). The indictment specified Counts 1, 2, 9, and 10 as predicate offenses. Although we have reversed Counts 1, 2, and 9, Count 10, possession with intent to distribute heroin, may serve as the underlying predicate offense. The crucial question is whether Madriz' possession of a loaded gun at her place of residence constitutes use of a firearm in relation to that crime.

 We have held that there are situations in which mere possession of a gun can constitute "use" under § 924(c). *United States v. Moore*, 580 F.2d 360, 362 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). When a firearm serves to protect the defendants or their drugs or to intimidate others, the firearm is said to have a role in the crime, and then there is a violation of section 924(c) regardless of whether the gun is actually displayed or discharged. *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985).

We conclude that the evidence is more than sufficient to support Madriz' conviction under section 924(c)(1). Madriz stored heroin, drug paraphernalia, and large amounts of cash in her residence on Shirley Street. DEA agent Wisenor testified at trial that most drug dealers have guns to protect the contraband. The jury could infer from all the evidence in the house that Madriz' possession of a loaded .357 Magnum was intended to facilitate the drug operations and to protect the contraband located on the premises.

This result is supported by *Stewart*, our leading decision on section 924(c)(1). In *Stewart*, agents arrested Stewart in his car in front of his residence. Agents discovered a sawed-off "UZI" rifle in the trunk of the car and drug manufacturing equipment inside the residence. On these facts, we held that the government could make out a case sufficient to sustain a firearms conviction. *Id.* at 539.

 Madriz argues that section 924(c) is not triggered unless the firearm was actually used in the drug transaction. She relies on our decision in *United States v.*

*Phelps,* 877 F.2d 28 (9th Cir.1989). In *Phelps,* the defendant had agreed to exchange a doctored semi-automatic for ten pounds of ephedrine, which the defendant needed for methamphetamine production. We reversed the defendant's conviction under § 924(c) because "the firearm did not have a role in the crime as an offensive weapon," but was used "only for barter." *Phelps,* 877 F.2d at 30. It is sufficient here to say that a juror could reasonably infer that Madriz' loaded .357 Magnum served an offensive purpose.

### 5. Jury Instructions on Count 11

The trial court instructed the jury that it could convict Madriz on Count 11 if it found beyond a reasonable doubt that she had knowingly "used or carried ... a firearm ... during and in relation to a drug trafficking crime." Instruction number 34 stated in part:

> the terms 'use' or 'carry' may be given their ordinary meaning, and include the ... possession of a firearm. Such possession may be either actual or constructive, so long as the firearm is readily accessible to the defendant....

Madriz argues that this instruction permitted the jury to convict her if they determined the gun was accessible, contrary to this court's holding in *Phelps, supra.*[7] In essence, Madriz repeats her earlier argument that the gun did not have an offensive role in the crime. We have already rejected that contention. There was no plain error.

### 6. Sentencing

Madriz alleges that the trial court failed to state adequate reasons to justify her sentence. In the alternative, Madriz argues that the trial court relied on impermissible reasons in determining her sentence. Resentencing is required since we have reversed Madriz' convictions on Counts 1, 2, and 9. As a result, we need not address this argument.

### C. Appellants Guardado and Estrada

On appeal, Guardado and Estrada raise similar issues. Each argues that the evidence was insufficient to support their convictions on any count and that the trial court misapplied the Sentencing Guidelines. In addition, Estrada challenges the correctness of jury instructions defining conspiracy.

### 1. Sufficiency of the Evidence

■ The evidence is sufficient to support a conviction if any rational juror, viewing the evidence in a light most favorable to the government, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2792. Because Guardado and Estrada failed to renew their motions for acquittal at the close of evidence, we review the sufficiency of the evidence only for "plain error or 'to prevent a manifest miscarriage of justice.'" *United States v. Comerford,* 857 F.2d 1323, 1324 (9th Cir.1988) (per curiam) (quoting *United States v. Ochoa–Torres,* 626 F.2d 689, 691 (9th Cir.1980)), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989). "A plain error is a highly prejudicial error affecting substantial rights." *Hernandez,* 876 F.2d at 777.

#### a. Analysis of Conspiracy Counts

■ Guardado and Estrada concede that a major conspiracy functioned to trans-ship narcotics from the United States to the Vancouver, British Columbia area. Nonetheless, they contend that there is insufficient evidence to connect them with that conspiracy.

Guardado argues that the evidence was insufficient to show that he was an intentional participant in the conspiracy. It is enough for conviction, however, if Guardado "knew of the existence of the conspiracy and acted with the intent to further its goals." *Esparza,* 876 F.2d at 1392. Once the government has proved the existence of a conspiracy, as both Estrada and Guardado concede it has, the government need

---

**7.** Madriz did not object to this instruction at trial. Therefore, we review the trial court's instruction for plain error. *United States v. Castro,* 887 F.2d 988, 992 (9th Cir.1989).

only show that the defendant had a slight connection to the conspiracy. *Hernandez,* 876 F.2d at 779; *Penagos,* 823 F.2d at 348. Here there is sufficient evidence to show that both Guardado and Estrado were connected to the conspiracies to distribute and export cocaine and to distribute heroin as charged in Counts 1, 2, and 9.

### 1. Guardado

The evidence linking Guardado with the conspiracy is not insubstantial and his conviction does not rise to the level of plain error. The jury could infer from all of the evidence against Guardado, including the fact that he was the driver of a truck loaded with cocaine and heroin, that he had knowing possession of the contraband. *United States v. Haro–Portillo,* 531 F.2d at 963 (9th Cir.1976). Moreover, the coordinated activities of the defendants—including the truck's arrival from San Jose to Madriz' Shirley Street house in Tacoma one day after Madriz had telephoned a San Jose source about the expected shipment, and Guardado's participation in attaching the mirrors to the truck—raise a reasonable inference of a joint venture. *Hernandez,* 876 F.2d at 778. This inference is strengthened by inconsistencies and improbabilities in Guardado's testimony. Guardado testified that he had never been to Madriz' house before the March arrest, and knew nothing of the drug trafficking. However, a photo found in Madriz' house showed that Guardado had been there several months earlier. Guardado admitted to Freitas that he was employed by Madriz, and when arrested, Guardado had a key to the residence on Clarkston Street.

### 2. Estrada

The evidence connecting Estrada to the conspiracies is even stronger. In addition to driving the truck laden with contraband, Estrada "worked" on the truck in the garage, removed the package of heroin from the false gas tank, and handed it over to Madriz. After the truck was removed from the garage, Estrada replaced the side mirrors. A photograph showed that Estrada previously had been to the Shirley Street house, and Freitas testified that he had seen Estrada in the house months ear-

lier while Freitas was preparing to carry-out a different cocaine transaction. When arrested, Estrada had in his possession a card showing the telephone number of the Clarkston Street house.

Guardado and Estrada rely on this court's decisions in *United States v. Penagos,* 823 F.2d 346 (9th Cir.1987), *United States v. Cloughessy,* 572 F.2d 190 (9th Cir.1977), and *United States v. Lopez,* 625 F.2d 889 (9th Cir.1980). These cases do not support the defendants' position. In *Cloughessy,* the defendant drove two acquaintances to a meeting with DEA agents. During the meeting, Cloughessy left the car and remained in a nearby restaurant. Although he followed one of the agents and reported his activities to the acquaintances, we held that the circumstantial evidence showed nothing more than mere casual association. *Cloughessy,* 572 F.2d at 191. Here, Guardado and Estrado actually drove the narcotics from San Jose to Tacoma. Their involvement with the trafficking spanned several months and included various locations.

In *Penagos,* we held that the defendant's equivocal presence on the street while a vehicle was being loaded with drugs was insufficient evidence of his participation in a conspiracy because the defendant had not appeared as a lookout at more likely times, during the actual transfer or delivery of drugs. *Penagos,* 823 F.2d at 348–50. In contrast, Estrada and Guardado were directly involved in the delivery and transfer of drugs. For the same reason *Lopez* is of no use to the defendants. *Lopez,* 625 F.2d at 896–97.

We conclude that the evidence is sufficient to support the convictions of Estrada and Guardado on Counts 1, 2, and 9.

### b. *Analysis of Substantive Counts*

Guardado and Estrada were each convicted of three substantive counts. A co-conspirator is liable for substantive offenses committed in furtherance of the conspiracy even though he does not actually participate in the acts, *see United States v. Miranda–Uriarte,* 649 F.2d at 1353, and

the jury was so instructed. Once the conspiracy was proved, there was sufficient evidence to convict the defendants of the substantive charges. We therefore conclude that the evidence was sufficient to support the conviction of Estrada and Guardado on Counts 7, 8, and 10.

### 2. Conspiracy Instruction

 To prove that the defendant joined a pre-existing conspiracy, the government must show that the defendant "knew of the existence of the conspiracy and acted with the intent to further its goals." *Esparza*, 876 F.2d at 1392. Estrada argues that the trial court instructions did not inform the jury as to the mental state required to join a conspiracy. Specifically, Estrada argues that the instructions were deficient because they did not state that he must have intended to further the goals of the conspiracy.

In evaluating the sufficiency of jury instructions, we review the instructions as a whole. *United States v. Adler*, 879 F.2d 491, 494 (9th Cir.1988).[8] So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions is a matter of discretion. *Id.*

The trial court's instruction on conspiracy stated in part:

A conspiracy is an agreement by two or more persons to act together in order to accomplish an unlawful objective.

In order for a conspiracy to be formed it is not necessary that the participants meet together and enter into an express agreement as to how they propose to accomplish their objective. It is sufficient that they come to a mutual understanding that they will act together to accomplish their unlawful objective....

The fact that a defendant may have knowledge that others are engaged in a conspiracy does not, without more, cause him or her to become a member of that conspiracy. Similarly, *a* person who has

on [sic] knowledge of a conspiracy but happens to act innocently in a way which furthers the objective of the conspiracy does not thereby become a member of the conspiracy.

In addition, instructions 12, 17, and 27 required the jury to find beyond a reasonable doubt that "the defendant knowingly became a member of the conspiracy," and that "the object of the conspiracy was the distribution [and exportation] of ... [illegal drugs]." Instruction 15 defined "knowingly" as an act done "voluntarily and intentionally and not because of mistake or accident or other innocent reason." Read together, the instructions require the jury to find that the defendant intentionally joined a conspiracy of which the object was to distribute and export narcotics. Thus, we conclude that the instructions do not constitute plain error.

### 3. Sentencing

 The trial court sentenced both Guardado and Estrada to a prison term of 235 months. These appellants argue that the trial court erred in determining their sentences under the Sentencing Guidelines in: (1) establishing their base offense level as Level 36, rather than 34; (2) failing to reduce the base level for minimal or minor role; and (3) enhancing the base level for obstruction of justice.

#### a. Determination of the Base Level

The district court set a base level of 36 for both appellants based on their involvement in the transportation of 20 kilograms of cocaine from San Jose to Tacoma and on the 75 kilogram cocaine transaction that occurred at the Semiahmoo Resort in January 1989. Guardado and Estrada argue that the trial court improperly included the Semiahmoo transaction, because they are not accountable for acts of the conspiracy prior to joining it, and insufficient evidence showed that they were members of the conspiracy in January. The defendants

---

**8.** Because Estrada did not object to the instruction on this ground at trial, this court reviews only for plain error, "a high probability that the alleged error materially affected the verdict."

*United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1573 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990).

rely on the Guidelines commentary which, at the time of sentencing, provided:

> If a defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators that was *known* to the defendant or was *reasonably foreseeable.*

U.S.S.G. § 2D1.4, comment, (n. 1) (1988) (emphasis added). We review the trial court's factual determinations in applying the Guidelines for clear error. *United States v. Wilson,* 900 F.2d 1350, 1355 (9th Cir.1990).

The offense level for a defendant convicted of conspiracy is determined by the amount of narcotics deemed to be part of the conspiracy. U.S.S.G. § 2D1.4. The trial court found that both Guardado and Estrada were members of the conspiracy at the time of the Semiahmoo transaction. As stated earlier, we find that there is sufficient evidence linking both Guardado and Estrada to the conspiracy in January—the time of the Semiahmoo transaction.[9] Thus, the trial court did not err in calculating the 75 kilogram transaction in their base level offense.[10]

### b. Reduction for Minor or Minimal Participants

■■■ Section 3B1.2 of the Guidelines permits the sentencing court to reduce a defendant's offense level by two or four levels if the court determines that the defendant was only a minor or minimal participant in the criminal activity. Guardado and Estrada argue that they were entitled to a reduction because they were only couriers in a large conspiracy.

We review a trial court's determination that a defendant is not a minor or minimal participant for clear error. *United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th

Cir.1989). The trial court's decision is necessarily rooted in the facts of the case. *United States v. Howard,* 894 F.2d 1085, 1087–88 (9th Cir.1990).

We find that the district court did not err in concluding that Guardado and Estrada were not minor participants in the conspiracy. As stated in the previous section, the district court could conclude from the evidence that Guardado and Estrada were more involved in the conspiracy than either testified to at trial. Moreover, the appellants had the burden of proving that they were minor participants. *Howard,* 894 F.2d at 1089. They clearly did not satisfy this burden. *See Sanchez–Lopez,* 879 F.2d at 557–58 (affirming trial court's determination that drug courier in possession of significant amount of heroin was not a minor participant).

### c. Enhancement of the base level for obstruction

■■■ Section 3C1.1 of the Sentencing Guidelines authorizes the trial court to adjust the base offense level upward two levels if a defendant willfully impedes or obstructs, or attempts to impede or obstruct, the administration of justice. The trial court adjusted the base level upward for both Estrada and Guardado because they testified falsely at trial. We review the district court's finding that the appellants obstructed justice for clear error. *United States v. Barbosa,* 906 F.2d 1366, 1369 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990).

■■■ Under the Guidelines, testifying untruthfully is conduct that constitutes obstruction of justice. U.S.S.G. § 3C1.1, comment (n. 1) (c) (1989). Guardado argues that the trial court erred in making this adjustment because his testimony at trial

---

**9.** In finding that Guardado and Estrada were involved in the Semiahmoo transaction, the trial court stated that it was no coincidence that three Mexican males delivered the cocaine to the Resort. Because there was insufficient evidence to establish the identity of the three men, we do not rely on this finding to support our result.

**10.** The government asserts that under the Guidelines, the trial court may consider transactions occurring *before* a defendant becomes a member of a conspiracy to increase his base offense level. Because the trial court correctly determined that Estrada and Guardado were members of the conspiracy at the time of the Semiahmoo transaction, we do not address the government's interpretation of the Guidelines.

was merely suspect and did not rise to the level of material or willful obstruction of justice. At trial, Guardado testified that he was unaware of the presence of drugs in the truck and that he was not involved in the conspiracy. Guardado claimed that a fourth man, Martin, had ridden with the three men from San Jose. According to Guardado, Martin was responsible for the drugs, their trip to the Clarkston Residence, and their final arrival at Shirley Street. Guardado's testimony was disproved by DEA agents who observed only three men get out of the truck at the Shirley Street residence and by Freitas, who testified that he met only three men inside the residence. Additionally, Guardado's claim that he had never before been to Tacoma and was not involved in the conspiracy was refuted by the January photo and Guardado's possession of the key to the Clarkston Street residence. Given the evidence, we cannot conclude that the trial court's finding was clearly erroneous. We therefore affirm Guardado's sentence.

■ Estrada contends that the trial court's imposition of the obstruction adjustment was unconstitutional because it chills the defendant's right to testify on his own behalf and, in effect, punishes the defendant for perjury on an evidentiary showing of less than evidence beyond a reasonable doubt. Additionally, Estrada argues that the trial court did not make specific findings as to which statements were perjurious. We have recently rejected these arguments. *See Barbosa,* 906 F.2d at 1369–70. Accordingly, we affirm Estrada's sentence.

## III. CONCLUSION

We reverse Torres conviction and remand for a new trial. We reverse Madriz' conviction on counts 1, 2, and 9 and remand the case for retrial on those counts. We affirm Madriz' conviction on the remaining counts, but vacate her sentence and remand for resentencing on those counts. We affirm Guardado's and Estrada's convictions and sentences on all counts.

AFFIRMED in part; REVERSED in part; REMANDED.