956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernesto Jose LOPEZ, Defendant-Appellant.
 No. 91-10222.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1992.
Decided March 10, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ernesto Lopez appeals his conviction on five counts of violating federal narcotics and firearms laws. We have jurisdiction over his appeal pursuant to 28 U.S.C. § 1291 (1988). We affirm his conviction on all counts.
 
 I.
 
 3
 In January of 1990, Anthony Abshire became a paid informant for the United States Bureau of Alcohol, Tobacco and Firearms (ATF), providing it reports on drug trafficking and use in his neighborhood in Phoenix, Arizona. Abshire soon befriended Maryann Lopez and her parents, Ernesto and Rosie Lopez, all of whom resided in the neighborhood. He began to convey to the ATF information regarding what he believed to be the Lopezes' significant involvement in the distribution of cocaine.
 
 
 4
 ATF agents eventually arranged for Abshire to engage in a controlled buy of cocaine from the Lopezes. They provided him with three hundred dollars, in return for which he procured a sixteenth of an ounce of cocaine from Rosie and Maryann Lopez. The transaction occurred at the home of Ernesto and Rosie. Based on this purchase and other information relayed by Abshire, ATF agent James Cooke swore out an affidavit for a warrant to search that home. A federal magistrate issued the warrant and ATF agents executed it on July 9, 1990. The agents uncovered cocaine, drug paraphernalia, firearms, ammunition and a pager in the house.
 
 
 5
 Ernesto Lopez was indicted on five counts of violating federal narcotics and firearms laws.[1] He was tried before a jury, which found him guilty on all five counts. The district court sentenced him to twenty-seven months in prison on Counts One, Two, Three and Five, to be followed by sixty months imprisonment on Count Four and thirty-six months of supervised release.
 
 
 6
 Lopez raises three issues on appeal. He first claims that the trial testimony of Anthony Abshire revealed that ATF agent Cooke included several false statements in the affidavit he swore out for a warrant to search Lopez's home. Lopez contends that the district court should, as a result, have suppressed the evidence uncovered by the ATF agents in executing the warrant or that, at the very least, it should have granted him a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), at which he could have proved that Cooke included the false statements intentionally or recklessly in his affidavit.
 
 
 7
 Second, Lopez complains that the United States did not provide him with exculpatory information regarding the pager found in his house until after the first day of trial. In doing so, he argues, the Government violated its duties under Brady v. Maryland, 373 U.S. 83 (1963), necessitating the reversal of his conviction.
 
 
 8
 Third, he asserts that the Government did not present sufficient evidence at trial to support his conviction under Count Four of the indictment, which charged him with using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).
 
 
 9
 We reject Lopez's contentions and affirm his conviction on all counts.
 
 II.
 
 10
 ATF agent Cooke made two false statements in the affidavit. The first of these statements has to do with the reliability of the unnamed informant, revealed at trial to be Abshire. Paragraph fourteen of the affidavit declares that this "informant has provided information and assistance to the San Diego ATF office over the last two years, and the information provided has led to the conviction of two persons for violations of Federal firearms laws."
 
 
 11
 Abshire's trial testimony indicated the misleading character of this statement. Abshire had never served as an informant for the ATF prior to moving to Phoenix and contacting the ATF in January of 1990. His only previous contact with the ATF had been in testifying for the defense at a trial in San Diego in which the ATF was heavily involved.
 
 
 12
 The second false statement is found in paragraph six of the affidavit. Cooke asserts that Abshire had been in Lopez's home on May 12, 1990 and had observed small boxes on a pool table "that were reported to the informant to contain marijuana. Numerous persons were also present around the pool table. Lopez was handing the small boxes to the men, and the men would then hand Lopez quantities of currency." At trial, Abshire testified that he had no idea what was in the boxes and had not been given any indication as to what their contents might be.
 
 
 13
 Based on Abshire's testimony, Lopez moved to suppress all evidence obtained from the search made pursuant to the warrant. The district court denied this motion, as untimely. The United States for good reason does not defend the district court's ruling on timeliness grounds.
 
 
 14
 Lopez did not have access to Abshire prior to trial, as the Government had refused to reveal his identity. Thus, it was only at trial that Lopez was able to probe the misleading character of the statements included in Cooke's affidavit. Particularly with respect to Abshire's previous involvement with the ATF, there appears no way in which Lopez could have questioned it beforehand. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court explicitly recognized that "[o]n occasion ... an instance of deliberate falsity will be exposed and confirmed without a special inquiry ... at trial," id. at 168, and condemned a "flat non-impeachment rule [that] would bar re-examination of the warrant even in these cases." Id. at 169. The invocation of such a rule was particularly inappropriate in this case, where the defendant had no means of uncovering the falsehoods prior to trial.
 
 
 15
 The Franks Court outlined the procedures which should be followed where a defendant alleges inaccuracies in the affidavit used to procure a warrant:
 
 
 16
 [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
 
 
 17
 Franks, 438 U.S. at 155-56. Thus, for a defendant to establish her entitlement to a Franks hearing, or to the suppression of evidence flowing from the execution of a purportedly faulty search warrant, she must demonstrate not only that the affidavit supporting the issuance of the warrant contained false statements, but also that the statements were "deliberately or recklessly included in the affidavit and ... [were] material to the magistrate's finding of probable cause...." United States v. Motz, 936 F.2d 1021, 1023 (9th Cir.1991); accord United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988).
 
 
 18
 There seems little question here but that Agent Cooke deliberately or recklessly made the false assertions contained in paragraphs six and fourteen of his affidavit. Paragraph fourteen indicated that Abshire had worked as a reliable informant for the ATF in the past. As an ATF agent, Cooke had absolutely "no reason to believe" this was true. United States v. Bertrand, 926 F.2d 838, 843 (9th Cir.1991). In Bertrand, this Court deemed "inexcusable" an affiant's incorrect suggestion that a number of informants had previously provided his police department with accurate information. Id. Cooke's representation of Abshire's testimony as a witness for the defense in an ATF trial as constituting assistance to the ATF is similarly inexcusable.
 
 
 19
 Cooke's inclusion of the false statements contained in paragraph six of his affidavit also amounts to more than mere negligence. Abshire stated unequivocally at trial that he had no idea as to the contents of the boxes he had observed in Lopez's house; he gave no indication that anyone had suggested the nature of those contents to him. Given the strength and clarity of Abshire's denial of any knowledge regarding the boxes, it appears likely that Cooke recklessly or deliberately included the assertions in his affidavit which suggested otherwise.
 
 
 20
 We must decide if "when [the] material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause...." Franks, 438 U.S. at 171-72. We look to the "totality of the circumstances," Illinois v. Gates, 462 U.S. 213 (1983), to see whether, "given all the circumstances set forth in the affidavit" as redacted, "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." Gates, 462 U.S. at 238.
 
 
 21
 Here, Cooke's affidavit contains sufficient material to support a finding of probable cause even when the false statements found in paragraphs six and fourteen are set aside. The affidavit presents detailed information that makes it probable that controlled substances and other evidence of crime would be found at the house of Ernesto and Rosie Lopez. It describes the controlled buy of cocaine which took place at that house. It further relates a conversation between the confidential informant who participated in the buy and Ernesto Lopez, in which Lopez talked about wanting to find someone who owed him drug money and patted a bulge in his pants, which presumably represented a gun, when asked what he would do if he caught the person. It details other conversations between the informant and Lopez regarding the purchase of cocaine.
 
 
 22
 The affidavit adequately presents, furthermore, the basis for the knowledge of the confidential informant by setting forth the personal conversations the informant engaged in with members of the Lopez family and by describing the controlled buy he carried out under the affiant's supervision. And it conveys information sufficient to establish the informant's veracity and reliability by stating that "[t]he informant has provided assistance and information to the Affiant for over the past five months. On each and every occasion this information has proven true and correct. This informants [sic] information has led to the seizure of an illegal firearm and suspected cocaine." This Court has previously found virtually identical statements to establish "demonstrated reliability." United States v. Stanert, 762 F.2d 775, 777-79 (9th Cir.1985), amended, 769 F.2d 1410 (9th Cir.1985); accord United States v. Landis, 726 F.2d 540, 543 (9th Cir.), cert. denied, 467 U.S. 1230 (1984).
 
 
 23
 Probable cause therefore existed even after the false statements are disregarded. Lopez was entitled neither to a Franks hearing nor to the suppression of the evidence found in his home.
 
 III.
 
 24
 Lopez asserts that the United States did not comply with its affirmative duty under Brady v. Maryland, 373 U.S. 83 (1963), to disclose all evidence favorable to him that was material to his guilt or punishment. Specifically, Lopez points out that not until the close of the first day of trial did the Government produce information concerning the pager which had been found in Lopez's home and which the Government had introduced into evidence that day. Agent Cooke had testified when the pager was introduced into evidence that drug traffickers often utilize such pagers and that the pager had been removed from Lopez's person at the time of his arrest. However, by utilizing the information provided by the Government, Lopez was able to ascertain that the pager was registered to another individual and that it had not been in service for over six months prior to his arrest. He was able to apprise the jury of this information.
 
 
 25
 This Court has held that "Brady does not necessarily require that the prosecution turn over exculpatory material before trial. To escape the Brady sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.' " United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988) (quoting United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir.1985)) (emphasis in original); accord United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991); United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.1988).
 
 
 26
 Here, the Government turned over the information regarding the pager at a point when Lopez was still able to make good use of it. Lopez called a representative of the pager company who testified that, according to the information provided by the Government and her company's own records, the pager had not been in service since January 9, 1990 (six months prior to Lopez's arrest) and that before that date it had been registered to an individual named Ralph Bautista. Lopez also cross-examined Agent Cooke and led him to admit that he had not in fact made any efforts to verify who the pager was registered to. Thus, it appears that the Government produced the pager material at a time when it was still of value to Lopez.
 
 IV.
 
 27
 Lopez moved below for a judgment of acquittal with respect to Count Four of his indictment, which charged him with violating 18 U.S.C. § 924(c) (1988). He contends that the district court erred in denying this motion as there existed insufficient evidence to convict him on that count. "In a review for sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Torres-Rodriguez, 930 F.2d 1375, 1382 (9th Cir.1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).
 
 
 28
 Title 18 U.S.C. § 924(c) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."[2] In United States v. Torres-Rodriguez, 930 F.2d 1375 (9th Cir.1991), we reviewed, on sufficiency of the evidence grounds, a Section 924(c) conviction. The police in Torres-Rodriguez had found a loaded gun in the defendant's bedroom between the mattress and spring of her bed. They had also found heroin, drug paraphernalia and large amounts of cash in her house. The defendant was subsequently convicted of possession with intent to distribute heroin and of violating Section 924(c). She argued that the latter conviction should not stand because the "firearm [had] played no role in [any] criminal activity." The Government had presented no evidence that she had ever used the gun during her drug trafficking activities or that she had even carried it on her person.
 
 
 29
 We upheld the Section 924(c) conviction. There exist situations, we stated, where "mere possession of a gun can constitute 'use' under § 924(c).... When a firearm serves to protect the defendants or their drugs or to intimidate others, the firearm is said to have a role in the crime, and then there is a violation of section 924(c) regardless of whether the gun is actually displayed or discharged." Id. at 1385 (citing United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985)). Because the defendant had been found with drugs, drug paraphernalia and cash in her house, and because a DEA agent had testified that "most drug dealers have guns to protect the contraband," we concluded that the "jury could infer from all the evidence in the house that [the defendant's] possession of a loaded .357 Magnum was intended to facilitate the drug operations and to protect the contraband located on the premises." Id. at 1385.
 
 
 30
 The evidence presented here bears a strong similarity to that which we found sufficient to sustain a Section 924(c) conviction in Torres-Rodriguez. The Government introduced into evidence a .22 caliber rifle, a .22 caliber revolver and a 12 gauge shotgun, all of which had been seized from Lopez's house along with the cocaine and drug paraphernalia found there.[3] It also introduced into evidence the dozens of rounds of live ammunition discovered in the house that were appropriate for use with those firearms. Agent Cooke testified that the ammunition was found in a safe in Lopez's master bedroom as well as in the headboard of his bed. Agent Mitchell testified that the guns were found in a hidden compartment in a bathroom adjoining Lopez's bedroom and that they were easily accessible there.
 
 
 31
 Anthony Abshire testified that, approximately two weeks before Lopez's arrest, he had seen Lopez on the street with a revolver-shaped bulge in his pants. Lopez was furious, Abshire testified, because an individual he had sent to buy marijuana from a new source had smoked the marijuana instead of bringing it back to Lopez. When Abshire asked Lopez what he would do when he found the individual, Lopez replied that he would kill him and patted the gun-like bulge.
 
 
 32
 Torres-Rodriguez counsels that from this evidence a reasonable jury could infer that Lopez's possession of firearms was intended to assist him in his drug trafficking activities and to protect the contraband located in the house. The government presented sufficient evidence of the use of firearms by Lopez in relation to a drug trafficking crime within the meaning of Section 924(c) to convict him of this offense.
 
 V.
 
 33
 None of the challenges Lopez presents to his conviction withstand scrutiny. On all counts his conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The counts charged the following: conspiracy to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count Two); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Three); using or carrying firearms in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and receiving and possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Five). The indictment charged Rosie Lopez with respect to Counts One, Two, Three and Four, and Maryann Lopez with respect to Counts One and Two. Rosie Lopez entered a guilty plea, while Maryann Lopez was tried with her father. Only Ernesto's appeal is before this Court
 
 
 [2]
 The statute defines "drug trafficking crime" to include those felonies punishable under the Controlled Substances Act, 21 U.S.C. § 801 et seq.. The felonies for which Lopez was convicted below, including conspiracy to distribute cocaine and to possess cocaine with the intent to distribute it, as well as the underlying substantive offenses, meet this definition
 
 
 [3]
 Lopez's argument that the Government did not proffer evidence of the firearms for purposes of Count IV of the indictment is frivolous. At one point during trial counsel for Maryann Lopez asked that the jury be instructed that a photograph of the compartment in which the guns had been found did not relate to his client, who was not indicted on any firearms charges. The trial judge refused to give this instruction, contending that the picture was relevant to the drug conspiracy charges on which Maryann had been indicted as drugs could have been stored in the hidden compartment along with guns. To confirm his belief, the judge asked the prosecutor if the picture was being introduced with respect to Counts I, II and V of the indictment, which included the charges for conspiring to distribute cocaine and for distributing cocaine on which Maryann Lopez had been indicted. In responding affirmatively, the prosecutor in no way limited the evidence to those counts. This whole exchange related, furthermore, only to the picture that was taken of the compartment in which the guns were found. The guns had previously been introduced into evidence and there had been extensive testimony regarding them by two ATF agents. Neither the judge nor the prosecutor restricted the applicability of such evidence to any particular count, though the judge did provide a cautionary instruction that the jury should not consider evidence of the firearms with respect to Maryann Lopez