**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rodolfo OCHOA–TORRES,**
**Defendant-Appellant.**

No. 79–1252.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 17, 1980.

Decided Aug. 21, 1980.

Joseph T. Vodnoy, Los Angeles, Cal., for defendant-appellant.

David Rodriques, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before MERRILL and WALLACE, Circuit Judges, and WYATT,* District Judge.

WALLACE, Circuit Judge:

Ochoa-Torres (Ochoa) appeals his conviction for conspiring to distribute heroin in violation of 21 U.S.C. § 846. He contends that (1) the government failed to produce substantial evidence to prove that he was a member of the alleged conspiracy at the time of the overt act alleged in the indictment; (2) the court in which he was tried, the United States District Court for the Eastern District of California, lacked jurisdiction because the government failed to show that any act of the conspiracy occurred in that district; (3) the district court erred in allowing rebuttal testimony beyond the scope of Ochoa's testimony in his own defense; and (4) the district court erred in imposing a three-year mandatory special parole term. We affirm in part and reverse and remand in part.

---

* Honorable Inzer B. Wyatt, United States District Judge, Southern District of New York, sitting by designation.

I.

The linchpin in the government's case against Ochoa was the testimony of Figoroa, a paid informant. Figoroa came to the Fresno, California area in the fall of 1977 to help Drug Enforcement Administration (DEA) agents uncover heroin dealers. On October 28, 1977, Figoroa met Ochoa's codefendant, Garcia, in a Fresno bar, and introduced himself as a heroin buyer from Chicago. Garcia stated that he had some connections in Los Angeles and offered to arrange a deal.

Figoroa and Garcia met again on October 30. Garcia stated that he had been to Los Angeles and had returned with a heroin sample, which he gave to Figoroa. Figoroa declined to accompany Garcia to Los Angeles to make a purchase that day, stating that he first needed to call someone to obtain the necessary funds. Figoroa then turned the heroin sample over to DEA Agent Plavan. Garcia provided a second sample to Figoroa later that same day, and quoted him a price of $2,800 an ounce. Figoroa gave this sample to Plavan the next day.

Figoroa and Garcia met again on October 31 and agreed to meet at 11:00 a. m. the following day and travel to Los Angeles to complete the transaction. Prior to the 11:00 a. m. meeting, Figoroa received $2,800 from Plavan, and Plavan arranged for Figoroa and Garcia to be followed by DEA agents. Once in Los Angeles, Figoroa and Garcia stopped at two different houses. Garcia went into the first house for five to ten minutes, and returned to report that he had been unable to make contact. He told Figoroa, however, that he had called "Rodolfo" (Ochoa's first name), and that they were to proceed to Rodolfo's home. At Rodolfo's, Garcia returned to the car after 15 minutes to explain that he needed to show Roldolfo the money. After taking the money to show Roldolfo, Garcia stated that

they were to meet Rodolfo at the union hall (were Ochoa worked).

At the union hall, according to Figoroa's testimony, Ochoa was introduced to Figoroa as Rodolfo. Ochoa then told Figoroa not to worry and assured him that the heroin would arrive shortly. Sometime later, Ochoa returned again to give similar assurances. A couple of hours after arriving at the union hall, Figoroa saw Garcia give the money to Ochoa, and Garcia then handed the package of heroin to Figoroa.

Ochoa denied any involvement or interest in the heroin transaction. He admitted that Garcia had come to his house wishing to buy drugs and had shown him some money, but he denied arranging to meet at the union hall. Instead, he had informed Garcia that he needed to conduct some business at the union hall. Ochoa claimed that when Garcia showed up at the union hall, Ochoa had merely pointed out an acquaintance from whom Garcia might be able to purchase drugs.

In rebuttal, Figoroa was allowed to testify, over defense objections, that he had met Ochoa's brother-in-law, Alvarez, in Fresno on October 30, and that Alvarez had driven him to a meeting with Garcia. Garcia had reassured him about the presence of Alvarez by stating that Alvarez was related to Rodolfo, one of Garcia's Los Angeles connections. Figoroa testified further that the initial stop in Los Angeles was for the purpose of looking for a cheaper price, but that the primary heroin connection had been the dealer, Rodolfo, from whom Garcia had a quoted price of $2,800.

## II.

■ At the close of the government's case-in-chief, Ochoa moved for a judgment of acquittal pursuant to Fed.R.Crim.P. Rule 29. The district court denied the motion. At the close of evidence, Ochoa failed to renew the acquittal motion. Although this failure "operates to waive the benefit of the motion," we frequently "review the sufficiency of the evidence to prevent a manifest miscarriage of justice." *Beckett v. United States*, 379 F.2d 863, 864 (9th Cir. 1967) (per curiam). After reviewing the record before us, however, we do not find that this case presents the "exceptional situation" which would require us to find that the district court's refusal to grant the acquittal motion constituted "plain error." *See United States v. Larson*, 507 F.2d 385, 387 (9th Cir. 1974) (per curiam).

## III.

Ochoa's next contention does raise a properly preserved sufficiency question. He argues that venue was improperly laid in the Eastern District of California and that the district court therefore lacked jurisdiction over the case. This contention is based on Ochoa's assertion that the government failed to prove the existence of a conspiracy at the time that Figoroa and Garcia traveled to Los Angeles. Ochoa concedes, however, that " 'an overt act committed in the course of a conspiracy which occurs in a district gives rise to jurisdiction to prosecute the conspirators in that district.' " *United States v. Prueitt*, 540 F.2d 995, 1006 (9th Cir. 1976), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977), *quoting United States v. Barnard*, 490 F.2d 907, 910 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). We must therefore decide whether the evidence was sufficient to find that the drive from Fresno to Los Angeles constituted an overt act of the conspiracy.

In reviewing for sufficiency of the evidence on this issue, we must consider the evidence in the light most favorable to the government. *Jackson v. Virginia*, 443 U.S. 307, 319 & n. 12, 99 S.Ct. 2781, 2789 & n. 12, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia, supra*, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original); *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979). It is not our task to weigh the evidence or to assess the credibility of the witnesses.

■ The essential elements of a conspiracy are "an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979); *United States v. Oropeza*, 564 F.2d 316, 321 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). It is sufficient that one member of the conspiracy has committed an overt act. *United States v. Jit Sun Loo*, 478 F.2d 401, 407 (9th Cir. 1973).

■ There was substantial evidence that Garcia and Ochoa formed a conspiracy prior to the Los Angeles trip from which reasonable jurors could have found Ochoa guilty beyond a reasonable doubt. The evidence showed that Garcia identified the samples that he presented to Figoroa as coming from Los Angeles. The sample which Garcia represented as the better quality heroin, to be sold at a quoted price of $2,800 an ounce, was approximately of the same purity as the heroin later purchased from Ochoa. Ochoa's brother-in-law, Alvarez, had been involved in one of the contacts between Figoroa and Garcia in Fresno, and Garcia had on that occasion identified Ochoa as one of Garcia's connections.

Ochoa does not press before us his trial objection as to the admissibility of this latter testimony. Rather, he seeks to diminish its effect by characterizing it as hearsay. The evidence was before the jury and it was up to the jury to weigh the significance of Garcia's statement to Figoroa together with the other evidence.

The evidence of the events which occurred in Los Angeles strengthens the inference that the connection from whom Garcia had already obtained a sample and a definite price was Ochoa. Figoroa testified in rebuttal that Garcia had stopped at the first location in an attempt to get a better price, but that Garcia had indicated that the second stop was the "principal source" from whom they had a definite offer. Ochoa characterizes this evidence as hearsay and conjecture, but we are satisfied that a jury could reasonably infer that Garcia actually informed Figoroa of these intentions.

That Garcia considered Ochoa to be the main connection is reinforced by Figoroa's testimony that Garcia had identified the connection at the second stop by the name Rodolfo. There is no indication in the record that Garcia ever identified who the first possible connection was to be. Similarly, Figoroa's testimony concerning Ochoa's initial reaction upon meeting him is consistent with the conclusion that Ochoa knew him as the ultimate purchaser. Although this detail of the transaction is also consistent with a more recent origin of the arrangement in question, it fits together with other indicators suggesting that a conspiracy had been formed prior to the departure of Figoroa and Garcia from Fresno. The evidence supports a finding that Garcia had previously arranged a sale with a Los Angeles connection and that the connection was Ochoa. Thus, an overt act was committed in Fresno, and venue was properly laid in the Eastern District of California.

### IV.

■ Ochoa argues that the district court erred in allowing Figoroa's rebuttal testimony to go beyond the scope of Ochoa's testimony. We observe first that we must review the district court's decision under the plain error standard, as Ochoa did not object to any of the rebuttal testimony on the ground now asserted. Fed.R.Crim.P. 52(a). *See United States v. Helina*, 549 F.2d 713, 718 (9th Cir. 1977). The decision to admit the rebuttal testimony was not plain error.

■ Ochoa claims that the only purpose of the rebuttal testimony was to bolster the government's contention that the conspiracy existed prior to the arrival of Figoroa and Garcia in Los Angeles. We disagree. The rebuttal testimony directly contradicted the testimony of Ochoa, who had denied having planned any narcotics transactions with Garcia. The admission of rebuttal testimony is within the discretion of the district court, *see United States v.*

*Pheaster*, 544 F.2d 353, 383 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). The district judge did not abuse that discretion here, let alone commit plain error.

## V.

■ Ochoa contends that the district court erred in imposing a three-year mandatory special parole term. The Supreme Court recently determined that Congress did not intend to authorize the imposition of mandatory special parole terms in cases such as this. *Bifulco v. United States*, —— U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). We thus remand to the district court with instructions to vacate the special parole term.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.