42 F.3d 1404
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie ROBERTS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin Charles JOHNSON, Defendant-Appellant.
 Nos. 93-10067, 93-10122.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1994.
Decided Nov. 10, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In these consolidated appeals, we address the conviction upon a jury verdict of Willie Roberts, Jr. and the sentence following a guilty plea of Alvin Charles Johnson.
 
 
 3
 Roberts appeals his convictions for possession of cocaine base with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. He argues that the evidence was insufficient to convict him of possession with intent to distribute (Count Eleven of the indictment), that the jury was erroneously instructed after a juror asked a question, and that the district court failed to instruct the jury that proof of possession on a particular day could not be considered as evidence of possession on a different day. We reverse Roberts' conviction on Count Eleven of the indictment.
 
 
 4
 Johnson appeals his sentence imposed under the Sentencing Guidelines following his plea of guilty to four counts of distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). He argues that the district court erred in relying on conduct that it did not consider relevant for determining the guideline range in determining an appropriate sentence within the guidelines. We affirm Johnson's sentence.
 
 
 5
 * We address the facts relevant to Roberts' and Johnson's appeals separately.
 
 
 6
 * Roberts was tried on one count of distribution of cocaine base and one count of possession with intent to distribute. The first count (Count Four of the indictment) related to an incident in March, 1992 in which Roberts was involved in selling a half ounce of cocaine base to an undercover agent at a residence in Stockton, California. Roberts does not challenge his conviction on Count Four.
 
 
 7
 The second count (Count Eleven of the indictment) involved the search of a different residence in Stockton. On June 25, 1992 Roberts was arrested in a Stockton park on an outstanding warrant. He identified himself to Detective Albert Sandoval and gave his address as 2904 West Pixie Drive. On July 1, 1992 the Pixie Drive residence was searched pursuant to a warrant. Sandra Quarels and four children were occupying the residence. Officers broke down a locked bedroom door and found 33 grams of cocaine base on a nightstand. They found other evidence of drug dealing and evidence connecting Roberts with the bedroom, including a wallet, identification, men's clothes, mail, a forfeiture receipt, court documents, and documents related to a driver's license examination. Some of this evidence was in the locked bedroom; some of it was elsewhere in the residence. Roberts was convicted of possessing with intent to distribute the 33 grams of cocaine base found on the nightstand.
 
 B
 
 8
 Johnson was originally indicted on nine felony counts. Pursuant to a plea agreement, he entered guilty pleas for four counts. The government agreed to dismiss the remaining five counts and, among other things, to stipulate that no weapon was used in the counts to which Johnson pled guilty. The Presentence Report prepared by the Probation Office recommended a sentence at the upper end of the guideline range of 108-135 months "to address the overall seriousness of the offense." The Presentence Report noted that Johnson was given "the benefit of the doubt" because no weapons enhancement had been recommended.
 
 
 9
 The district court imposed a sentence of 130 months. The court stated that it considered Johnson's lack of criminal history and the amount of drugs involved to be mitigating factors, but that several other factors were aggravating:
 
 
 10
 The defendant has dealt drugs over a period of several years, has no record of steady employment, and had in his possession the tools of drug dealing, including cellular phones, pay/owe sheets and guns, one of which was an Uzi machine gun. The conduct here occurred close to a school and involve[d] other participants. Although defendant knew that the police were watching him ... he still continued to deal drugs.
 
 II
 
 11
 Roberts argues that the evidence was insufficient to support his conviction for possession with intent to distribute the 33 grams of cocaine base discovered at the Pixie Drive residence. We agree.
 
 
 12
 Roberts forfeited his objection to the sufficiency of the evidence by not moving for judgment of acquittal at the close of the government's case or at the close of trial.[1] United States v. Kuball, 976 F.2d 529, 531 (9th Cir.1992); United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992). We therefore review the sufficiency of the evidence only for "plain error or 'to prevent a manifest miscarriage of justice.' " United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988) (per curiam) (quoting United States v. Ochoa-Torres, 626 F.2d 689, 691 (9th Cir.1980)), cert. denied, 488 U.S. 1016 (1989). "A plain error is a highly prejudicial error affecting substantial rights." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989). "If such error has been committed, [we have] the power and duty to prevent a miscarriage of justice." United States v. Ramirez, 880 F.2d 236, 238 (9th Cir.1989); see also United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).[2]
 
 
 13
 Roberts did not have actual possession of the cocaine when it was discovered July 1; he was in custody after having been arrested on June 25. The government must therefore prove Roberts had constructive possession. Williams v. United States, 418 F.2d 159, 162 (9th Cir.1969), aff'd, 401 U.S. 646 (1971); United States v. Behanna, 814 F.2d 1318, 1319 (9th Cir.1987). To prove constructive possession, the government must prove both that Roberts knew of the presence of the cocaine and that he had the power to exercise dominion and control over it. United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991); Behanna, 814 F.2d at 1319. At issue in any constructive possession case is whether "there is such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (quotations and citations omitted).
 
 
 14
 If the defendant has exclusive control over the premises where contraband is found, then knowledge and control of the contraband may be inferred. United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985).
 
 
 15
 A more difficult situation for the government exists when the premises are shared by more than one person. Mere proximity to contraband, presence on the property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession.
 
 
 16
 Id.
 
 
 17
 We agree with Roberts that this is not an exclusive-control case. The evidence clearly linked both Sandra Quarels and Roberts with the residence and with the locked bedroom in which the cocaine was found. California Bureau of Narcotics Enforcement Agent Mouthino searched the Pixie Drive residence. He found items of mail, bills, and receipts in the names of both Quarels and Roberts within the residence and in the bedroom. Agent Mouthino testified that, after agents broke down the bedroom door, Quarels stated that "all we would have to do is ask for a key to the door." He also testified that "[t]here were men's and women's clothing scattered throughout the bedroom," and that it was his opinion, based on his search of the residence and the bedroom, that the "room was co-occupied by two individuals." Quarels pleaded guilty to possession of the cocaine found on a nightstand in the locked bedroom. The evidence clearly established that Roberts did not have exclusive control of the bedroom.
 
 
 18
 The government argues that, even if this is a joint-control case, the presence of Roberts' belongings in the room suffices to allow an inference of knowledge, dominion, and control. The government relies on United States v. Terry, 911 F.2d 272. Terry involved constructive possession of a weapon found in a closet of the bedroom the defendant shared with his wife. We stated:
 
 
 19
 Although the issue is close, we find that under the highly deferential standard of review there was sufficient evidence to sustain the verdict. The evidence against Terry centered on the fact that the firearm was found in the closet of his bedroom. Terry and his wife are the owners of the house and sole occupants of the bedroom where the firearm was found. Only Terry's wife prevented Terry from accessing the gun. Terry was the only person present when the home was searched.
 
 
 20
 Id. at 278.
 
 
 21
 Terry is inapposite on its facts. Unlike Terry, Roberts was not present when the police searched the residence. Not only was he not present, but he had not been present for a considerable period of time.
 
 
 22
 The factual situation here is similar to that addressed in Delgado v. United States, 327 F.2d 641 (9th Cir.1964). In Delgado, a man and woman were convicted of possession of marijuana found in the drawer of a nightstand in their shared bedroom. Reversing the convictions, we stated:
 
 
 23
 It is fundamental to our system of criminal law that guilt is individual. Here, that means that there must be sufficient evidence to support a finding, as to each defendant, that he or she had possession of the marijuana.... [H]ere it is pure speculation as to whether Rodriguez alone, or Delgado alone, or both of them, had possession. No doubt one of them did; perhaps both did. But proof that does not give a rational basis for resolving the doubts necessarily present in the situation pictured to the jury in this case is not sufficient.
 
 
 24
 Id. at 642.
 
 
 25
 The government presented absolutely no evidence that Roberts had actual possession of the cocaine. Nor does the evidence, given that Roberts had been in jail for a week at the time of the search, establish the required relationship between Roberts and the cocaine necessary to treat his possible dominion and control as if it were actual possession. Even under the highly deferential standard of review we employ here, we must conclude that it was plain error to submit Count Eleven to the jury. This error affected Roberts' substantial rights by allowing the jury to convict him of possession of a controlled substance in the absence of any evidence of dominion or control over the substance. This, therefore, is an appropriate case for the exercise of our discretion to reverse for an error which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 113 S.Ct. at 1776. While we need not, and do not, find that Roberts is actually innocent, id. at 1779, we conclude that the complete failure of proof on an essential element of the crime with which Roberts was charged in Count Eleven seriously affects the fairness, integrity and public reputation of judicial proceedings.
 
 III
 
 26
 Roberts also argues that the district court committed errors in its response to a jury question and in failing to give a particular jury instruction. We need not decide these issues in light of our conclusion that Roberts' conviction cannot stand.
 
 IV
 
 27
 Johnson appeals the sentence imposed by the district court. We review de novo the district court's application of the sentencing guidelines. United States v. Kohl, 972 F.2d 294, 297 (9th Cir.1992).
 
 
 28
 Section 1B1.4 of the United States Sentencing Guidelines provides that "[i]n determining the sentence to impose within the guideline range, ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The section derives directly from 18 U.S.C. Sec. 3661. United States v. Carpenter's Goldfish Farm, 998 F.2d 692 (9th Cir.1993).
 
 
 29
 Johnson argues that the court erred when it considered his possession of a firearm in determining the sentence to impose within the guideline range. Specifically, he asserts that consideration of the weapon for purposes of setting a sentence within the guideline range was "otherwise prohibited by law," because the weapon had not been considered for purposes of establishing the guideline range under U.S.S.G. Sec. 1B1.3. Johnson's theory is that the stipulation that "no weapon was used" not only foreclosed consideration of the firearm for purposes of Sec. 1B1.3, but also foreclosed its consideration under Sec. 1B1.4. We disagree.
 
 
 30
 It is well-settled that the sentencing court may consider conduct that was illegal, but for which the defendant was neither charged nor convicted. United States v. Restrepo, 946 F.2d 654, 660 (9th Cir.1991) (en banc) (upholding sentence based on a total of 65.83 grams of cocaine where defendant was convicted for distribution of only 37.5 grams of cocaine), cert. denied, 112 S.Ct. 1564 (1992); United States v. Herrera-Figueroa, 918 F.2d 1430, 1435 (9th Cir.1990) ("in determining what sentence to impose, the sentencing court may consider allegedly criminal conduct of which the defendant has not been convicted"). Conduct may be considered whether or not it appeared in the charges to which the defendant pled guilty. United States v. Nakagawa, 924 F.2d 800, 804 (9th Cir.1991).
 
 
 31
 Johnson's argument fails to distinguish between a situation where, as here, the district court considers the weapon for purposes of setting a sentence within the range, and a situation where the court considers a dismissed charge for purposes of departing from the guideline range. When the district court accepts a plea agreement providing for the dismissal of certain counts, it cannot rely on the dismissed counts for purposes of an upward departure. United States v. Faulkner, 952 F.2d 1066, 1071 (9th Cir.1991); United States v. Castro-Cervantes, 927 F.2d 1079, 1082 (9th Cir.1990). The reasoning of Faulkner and Castro-Cervantes is that, by accepting the plea agreement, the district court acknowledges that the "remaining charges adequately reflect the seriousness of the actual offense behavior." U.S.S.G. Sec. 6B1.2(a); Faulkner, 952 F.2d at 1071; Castro-Cervantes 927 F.2d at 1082. An upward departure, under those circumstances, would indicate that a sentence within the guideline range, and therefore the plea agreement itself, did not adequately reflect the seriousness of the defendant's behavior.
 
 
 32
 The district court did not depart upward, but rather sentenced Johnson near the upper end of the applicable range. The Commentary to Sec. 1B1.4 specifically authorizes the district court's action: "For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range." The government's stipulation that "no weapon was used" in the offense ensured that Johnson would not receive a weapons enhancement under Sec. 2D1.1(b)(1); the stipulation did not provide that the district court could not consider the weapons in determining a sentence within the range.
 
 
 33
 Johnson also argues that consideration of the firearm violated his right of due process. Due process is not violated by consideration of a defendant's possession of firearms as a sentencing factor. McMillan v. Pennsylvania, 477 U.S. 79 (1986). As we explained in Restrepo, the Court in McMillan reasoned that "the use of handgun possession as a sentencing factor does not (1) negate the presumption of innocence, or relieve the prosecution of the burden of proving guilt of the underlying crime, id. at 87, or (2) alter the maximum penalty available for the crime committed, or (3) create a separate offense calling for a separate penalty, id. at 88-90." Restrepo, 946 F.2d at 656. For the same reasons, due process is not offended by the district court's decision to sentence Johnson at the upper end of the guideline range for the crimes of conviction.
 
 V
 
 34
 We reverse Roberts' conviction on Count Eleven and remand for resentencing. We affirm Johnson's sentence.
 
 
 35
 REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " United States v. Olano, 113 S.Ct. 1770, 1777 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Forfeiture, as opposed to waiver, does not extinguish an error under Fed.R.Civ.P. 52(b). Id
 
 
 [2]
 The Supreme Court recently reaffirmed the principle that a court of appeals may, within its sound discretion, reverse a conviction for plain error. Olano, 113 S.Ct. at 1776. Our authority to do so is circumscribed by Fed.R.Crim.P. 52(b). "There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.' " Id. Moreover, we should exercise our discretion only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. 6 (citations and quotations omitted). Such a remedy is warranted in cases including, but not limited to, actual innocence. Id. at 1779